UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 14-80200-CR-MARRA

UNITED STATES OF AMERICA

vs.

UNIVERSAL INDUSTRIES LIMITED, INC
                Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and UNIVERSAL INDUSTRIES LIMITED INC. (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to count(s)  1 and 2  of the information, which counts charge the defendant with

**Count 1:** knowingly and willfully engaging in negotiations concerning selling, delivering, or otherwise servicing a transaction involving an item to be exported from the United States to the Kingdom of Thailand and subject to IEEPA and the EARs, that is, three (3) temperature transmitters used on F-16 fighter jets, in violation of a Department of Commerce denial order; all in violation of Title 50, United States Code, Section 1705(a); Title 15, Code of Federal Regulations, Sections 736.2(b)(4), 764.2, and 764.3(b)(2); and Title 18, United States Code, Section 2.

**Count 2:** knowingly and willfully engaging in negotiations concerning selling, delivering, or otherwise servicing a transaction involving an item to be exported from the United States to the Islamic Republic of Pakistan and subject to IEEPA and the EARs, that is, a saddle part for the J-69 engine used on T-37 military trainer aircraft, in violation of a Department of Commerce denial

order; all in violation of Title 50, United States Code, Section 1705(a); Title 15, Code of Federal Regulations, Sections 736.2(b)(4), 764.2, and 764.3(b)(2); and Title 18, United States Code, Section 2.

2. The defendant will provide to the United States written evidence in the form of a notarized resolution of the Board of Directors of Universal Industries Limited, Inc., with both notary and corporate seals, certifying that the defendant corporation is authorized to plead guilty to the felony charges set forth in paragraph 1, and to enter into and comply with all provisions of this plea agreement. The resolution shall further certify that the defendant's corporate representative is authorized to take these actions and that all corporate formalities, including but not limited to, approval by the defendant's directors, required for such authorization, have been observed. The defendant agrees that corporate representative of the defendant shall appear to enter the guilty plea and for imposition of the sentence in the United States District Court for the Southern District of Florida.

3. The defendant shall not, through a change of name, business reorganization, sale or purchase of assets, divestiture of assets, or any similar action seek to avoid the obligations and conditions set forth in this plea agreement. This plea agreement, together with all of the obligations and terms hereof, shall inure to the benefit of and bind partners, shareholders, assignees, successors-in-interest, or transferees of the defendant.

4. The defendant is aware that the defendant's sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the defendant's sentence is not governed by the United States Sentencing Guidelines (USSG) because, although

the offense conduct to which the defendant is pleading guilty is covered by Section 2M5.2 of the USSG, that Guideline is not listed under Sections 8C2.1 or 8C2.2 of the USSG, which governs fines for organizations. Accordingly, pursuant to Section 8C2.10 USSG, the sentence is to be determined by applying the provisions of Title 18, United States Code, Sections 3553 and 3572. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

5. The defendant, as a corporate violator, also understands and acknowledges that the offenses set forth in paragraph 1 each carry a maximum fine of $1,000,000.00 pursuant to 18 U.S.C. 3571(c) and an obligation to pay any applicable interest or penalties on fines or restitution not timely made. The defendant is also subject to a term or corporate probation of up to five years for each count pursuant to 18 U.S.C. 3561.

6. The defendant further understand and acknowledges that, in addition to any sentence imposed under paragraphs 4 and 5 of this agreement, a special assessment in the amount of $400.00 for each count will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

7. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's

background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 5 above, that the defendant may not withdraw this plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

9. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 2/6/15                By: _[signature]_
                                MICHAEL WALLEISA
                                ASSISTANT UNITED STATES ATTORNEY

Date: 2-4-2015              By: _[signature]_
                                LEONARD A. SANDS, ESQ.
                                ATTORNEY FOR DEFENDANT

Date: 2-4-2015              By: _[signature]_ V.P.
                                CORPORATE REPRESENTATIVE
                                FOR DEFENDANT
                                _Joseph S. Lucia, President_
                                Joseph S. Lucia

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER 14-80200-CR-MARRA

UNITED STATES OF AMERICA

vs.

RUSSELL HENDERSON MARSHALL, and
UNIVERSAL INDUSTRIES LIMITED, INC.,

           Defendants.
_____/

### STIPULATED FACTUAL BASIS FOR PLEA

1.    The export of "commerce controlled" items are regulated by the United States Department of Commerce (DOC). Under the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1701 et.seq., the President of the United States was granted the authority to deal with unusual and extraordinary threats to the national security, foreign policy and economy of the United States. Under IEEPA, the president could declare a national emergency through Executive Orders that had the full force and effect of law.

2.    On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 1322, which declared a national emergency with respect to the unrestricted access of foreign parties to United States goods and technologies and extended the Export Administration Regulations (AEAR@), Title 15, Code of Federal Regulations, Sections 730-774. Through the EAR, the DOC imposed license or other requirements before an item subject to the EAR could be lawfully exported from the United States or lawfully re-exported from another country. These items were included on the commerce control list (ACCL), published at Title 15, Code of Federal

Regulations, Section 774, Supp.1. Items on the CCL were categorized by Export Control Classification Number ("ECCN"), which denoted the applicable export controls. The President issued annual Executive Notices extending the national emergency declared in Executive Order 1322 from the time period covered by that Executive Order through the time covered by the Information.

3. Under IEEPA and the EAR, it was a crime to knowingly engage in conduct which is prohibited under any order issued under the EAR; to cause, aid or abet, counsel command, induce, procure or permit the doing of any act prohibited by the EAR or any order issued under the EAR; to conspire to bring about of do any act that constitutes a violation of the EAR; or to take any action that is prohibited by a denial order, in violation of Title 50, United States Code, Section 1705 and Title 15, Code of Federal Regulations, Sections 764.2 and 746.3.

4. The Department of Defense, Defense Criminal Investigative Service (DCIS), initiated an investigation of UNIVERSAL INDUSTRIES LIMITED Inc., located in the Southern District of Florida, based on a Department of Defense (DoD) Hotline Complaint dated November 15, 2012.

5. On August 19, 2011, RUSSELL H. MARSHALL was sentenced to three years of probation by Judge Marra in the Southern District of Florida for mis-labeling a package of J85 engine blades as commercial parts valued at $2,000 when he knew the package contained military parts valued at $67,000 destined for Singapore in violation of Title 18, United States Code, Section 1001.

6. On August 19, 2011, UNIVERSAL INDUSTRIES LIMITED, INC. was sentenced to one year of probation by Judge Marra in the Southern District of Florida for attempting to ship 200 J85 engine blades without obtaining a license from the Department of State in violation of the Arms Export Control Act, Title 22, U.S.C. §§ 2778(b)(2) and (c).

2

7. As a result of this sentencing, UNIVERSAL INDUSTRIES LIMITED, INC. was banned from exporting military use items (Licenses issued by the U.S. Department of State) until August 19, 2012 and dual use items (Licenses issued by the U.S. Department of Commerce) until August 19, 2014.

8. The decision made by the Department of Commerce as published in the Federal Register Volume 77, Number 151 (Monday, August 6, 2012) provided that:

Until August 19, 2014, UNIVERSAL INDUSTRIES LIMITED, INC., with a last known address of 3050 S.W. 14th Place, Unite 3, Boynton Beach, Florida, when acting on behalf of Universal, its successors or assigns, agents or employees, ("the Denied Person") may not, directly or indirectly, participate in any way in any transaction involving any commodity, software or technology exported or to be exported from the United States that is subject to the Regulation, including carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; benefit in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations. The order further provided that no person may, directly or indirectly take any action that facilitates the acquisition, or attempted acquisition by the Denied Person of the ownership, possession, or control of any item subject to the Regulations that has been or will be exported from the United States.

## COUNT 1

9. U.S. Probation Officer Ann Roman, who supervises MARSHALL visited MARSHALL at his place of business, 3050 S.W. 14th Place Unit 3, Boynton Beach, FL on February 22, 2013,

3

and inquired if he was complying with the terms of his probation. At that time Christina VASQUEZ, the Office Manager for UNIVERSAL INDUSTRIES, provided Officer Roman with a purchase order and quotation for a temperature sensor Part Number 4034T94P02, [National Stock Number (NSN): 6685-00-208-2898] for Aeromax Industries located in California, who was ultimately shipping the item to the Royal Thai Air Force.

10. A review of the documentation obtained by Probation Officer Roman revealed RUSSELL HENDERSON MARSHALL and UNIVERSAL INDUSTRIES LIMITED INC., were engaged in negotiations to provide a temperature transmitter Part Number 4034T94P02, (NSN: 6685-00-208-2898) for Aeromax Industries located in California, which was to be shipped to Thailand by Aeromax Industries for the Royal Thai Air Force. An email recovered from discarded trash behind UNIVERSAL INDUSTRIES LIMITED, INC's location in Boynton Beach, Florida dated November 19, 2012 advised that the temperature transmitter was for the Royal Thai Air Force and the shipping destination was Thailand. This email contained a handwritten notation, "Kamtech System "$3,250". On November 20, 2012. Universal Industries Limited, Inc. issued a quotation to Aeromax Industries, Inc., for the sale and delivery of three (3) temperature transmitters, Part Number 4034T94P02,  (NSN): 6685-00-208-2898 for a price of $12,675.00.

11. On February 13, 2013, Aeromax Industries Inc., issued purchase order number 20234374 to UNIVERSAL INDUSTRIES LIMITED, INC., attention RUSSELL MARSAHLL for the purchase of three (3) temperature transmitters, Part Number 4034T94P02,  NSN: 6685-00-208-2898 for a price of $12,828.00 which described the ultimate destination as Thailand and the ultimate user as the Royal Thai Air Force.

12.     Documentation from Aeromax Industries Inc. showed that: On February 8, 2013, RUSSELL MARSHALL (UNIVERSAL INDUSTRIES LIMITED INC., Sales Department) sent an email to Aeromax industries Inc., advising that the best price they could offer for the temperature transmitters was $4276.30 each.  On July 16, 2013, Aeromax sent an email to RUSSELL MARSHALL inquiring about the status of the delivery of the temperature transmitters under purchase order number 20234374 as it was overdue.  On October 21, 2013, Aeromax Industries Inc. cancelled the order from RUSSELL MARSHALL and UNIVERSAL INDUSTRIES LIMITED INC., because they learned that UNIVERSAL INDUSTRIES LIMITED INC., had been debarred and that UNIVERSAL INDUSTRIES INC., could not sell any parts for export.  As a result of this discovery Aeromax notified the Royal Thai Air Force that they were unable to obtain the temperature transmitters because the supplier (UNIVERSAL INDUSTRIES LIMITED INC.) had been barred from selling controlled items for export.  On December 11, 2013 The Directorate of Aeronautical Engineering, Royal Thai Air Force sent a letter to Aeromax Industries, Inc. advising that the purchasing contract was cancelled and imposing penalties on Aeromax Industries Inc. for the failure to deliver.

13.     Homeland Security Investigations (HIS) Agents obtained a license determination from the United States Department of Commerce, Bureau of Industry and Security (DOC), which shows that Part Number 4034T94P02, Transmitter, Temperature Electric Resistance- NSN 6685-00-208-2898 is a controlled item under ECCN 9A619.x on the CCL for anti-terrorism, national security reasons and regional stability reasons, and required a DOC license for export to Thailand.  Therefore, due to the debarment of UNIVERSAL INDUSTRIES LIMITED, INC, neither UNIVERSAL INDUSTRIES LIMITED, INC, nor RUSSELL HENDERSON

MARSHALL, while acting on behalf of UNIVERSAL INDUSTRIES LIMITED, INC, could be involved in any transaction for the export of the temperature transmitter to Thailand.

## COUNT 2

14. On or about August 13, 2014, search warrants were executed at the residence and business locations of Russell Henderson Marshall and Universal Industries Limited, Inc. Pursuant to the execution of the search warrants numerous business records were seized.

15. Among the business records seized during the search were documents related to the sale of a "saddle" which was to be used on the T-37 by the Pakistan Air Force. These documents included purchase orders from SOI Aviation to Universal Industries Limited Inc., and end user statements between SOI Aviation and Universal Industries Limited which showed that the "saddle" was to be exported to the Royal Pakistan Air Force by SOI Aviation which was date 1/8/2013. The end user certification supplied to Universal Industries by SOI Aviation included the export license number that SOI Aviation had obtained for the export of the "saddle". An end user certificate date 1-9-2013 was also found in which Russell Marshall advised the supplier of the "saddle", Calport Aviation, that the end user of the "saddle" was SOI Aviation in the United States.

16. Additional documents were obtained from SOI Aviation. These documents included additional purchase orders and e-mail communications between SOI Aviation and Universal Industries Limited, Inc. related to the "saddle" transaction which showed that Russell Marshall and Universal Industries were aware that the "saddle" was to be exported from the United States by SOI Aviation to the Pakistan Air Force.

17. Homeland Security Investigations (HIS) Agents obtained a license determination from the United States Department of Commerce, Bureau of Industry and Security (DOC), which

shows that Saddle Part Number 723865-101 was controlled under ECCN No 9A619.x, of the CCL for anti-terrorism, national security, and regional stability reasons, and required a DOC license for export to Pakistan. Therefore, due to the debarment of UNIVERSAL INDUSTRIES LIMITED, INC, neither UNIVERSAL INDUSTRIES LIMITED, INC, nor RUSSELL HENDERSON MARSHALL, while acting on behalf of UNIVERSAL INDUSTRIES LIMITED, INC, could be involved in any transaction for the export of the temperature transmitter to Pakistan.

## FACTS COMMON to COUNTS 1 AND 2

18. Records maintained by the Florida Department of State, Division of Corporations show that RUSSELL HENDERSON MARSALL was the Vice President of UNIVERSAL INDUSTRIES LIMITED, INC. and that UNIVERSAL INDUSTRIES LIMITED, INC. was located within the Southern District of Florida.

19. The facts set forth in this stipulated factual basis for a plea establish the necessary elements for Counts one and two of the information which charge violations of the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1702 and 1705, and the Export Administration Regulations (EAR), Title 15, Code of Federal Regulations.

Sections 736.2 and 764.2, by RUSSELL HENDERSON MARSHALL, and UNIVERSAL INDUSTRIES LIMITED, INC.

_____     2-6-15
RUSSELL HENDERSON MARSHALL          Date
Defendant

_____     2-6-2015
LEONARD A. SANDS, ESQ               Date
Counsel for Defendant Marshall

_____     2/6/15
MICHAEL WALLEISA                    Date
Assistant United States Attorney

Joseph S Lucia President 2/6/15
Joseph S Lucia
For Univeral Inds.

8